IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | | |
|---|---|---|---|
| **CARLOUS S. HORTON,** | ) | | |
| | ) | | |
| **Movant,** | ) | | |
| | ) | | |
| v. | ) | Case No. | 6:15-cv-03019-MDH |
| | ) | | 6:11-cr-03021-MDH |
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Respondent.** | ) | | |

## ORDER

Before the Court is Movant Carlous Horton's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). On August 3, 2015, the Court issued an order denying the majority of Movant's claims for relief and ordering an evidentiary hearing on Movant's claim of ineffective assistance of counsel during jury selection only (Doc. 31). To summarize the remaining claim, Movant alleges he was not present during the execution of peremptory strikes and he was not provided the opportunity to register his opinions and misgivings with trial counsel regarding potential jurors. The Court ordered an evidentiary hearing in order to: "(1) make a factual finding concerning whether [Horton] was afforded an opportunity to discuss peremptory strikes with counsel, and (2) hear argument concerning whether the presumption-of-prejudice exception to *Strickland* applies in this case [as argued by Movant]."

### I. BACKGROUND

On September 24, 2015, the Court held an evidentiary hearing. The parties presented evidence and argument in accordance with the Court's August 3, 2015 order. Movant and his co-defendant, Christopher Holmes, took the stand on behalf of Movant. The men currently are housed in the same BOP facility although they are in different pods. They acknowledge that

1

they have had some communication regarding the issues of this case. Mr. Holmes has a similar 2255 action on file raising the same issues regarding peremptory strikes.

Both Horton and Holmes testified that they were in the courtroom on the first day of trial during the questioning of jurors, that they had notepads and pens available to them to take notes during the voir dire process, that they were "brushed off" when they attempted to voice their opinions/concerns to their attorneys during voir dire, and that they were removed from the courtroom during the recess when the decisions regarding peremptory strikes were made by their attorneys. Movant testified that he took notes about the potential jurors during voir dire on his own pad of white paper and he brought those notes with him when he was returned to a holding cell during the recess.[1] Movant stated he was upset when he was returned to the holding cell and he was adamant that an injustice had occurred because he believed he had a right to be present when the peremptory strikes were executed based on his involvement in a former state court trial. Movant and Holmes testified that while they were in their holding cell during the recess they discussed their concerns regarding potential jurors, including a woman who stated she had been raped by a black man (not on the jury), a woman who allegedly shed a tear when she heard the first woman say she had been raped by a black man (on the jury), and a man who stared at them in a mean or cold manner throughout voir dire (on the jury).

Movant testified that when he was returned to the courtroom later that afternoon he was ready to "explode" on his attorney; however, he stated he did not have the opportunity to voice his concerns to his attorney because roughly thirty seconds after he was returned to the courtroom, the jury panel was ushered back in. Holmes testified that the fourteen jurors were already selected when they came back into the courtroom but Movant testified that he could not

---

[1] Movant claims he later sent those notes to a relative after trial but they were not offered as an exhibit at the hearing or described in any detail.

recall whether the full jury pool came back into the courtroom or just the fourteen selected jurors. Movant testified that he tried to express his concerns to counsel at that time but, again, his counsel brushed him off and spoke to co-defendant's counsel instead. When asked why he did not bring the alleged injustice directly to Judge Dorr's attention, Movant testified that he thought he was only permitted to speak through his counsel, he did not want to irritate the trial judge whom he believed was already annoyed with him because of pre-trial self-representation and pro se filings, and he did not want to be removed from the courtroom during trial, which he read could happen. When asked why he did not raise the issue through a post-trial motion, Movant responded that his first pro se post-trial motion was denied because he was represented by counsel, he thought he had to raise the issue in a separate motion, and he ran out of stationary/stamps.

Movant's trial counsel, Bob Lewis, and Holmes' trial counsel, Kristin Jones, testified on behalf of the Government. Both attorneys testified that Movant was present for the entire voir dire process and when the jury was impaneled. The attorneys testified that the peremptory strikes were communicated to the Court by crossing names off a list of potential jurors. They acknowledged that the names were crossed off during the recess; however, both attorneys testified that in their normal practice they would never exercise peremptory strikes without first consulting a client and that, if they were not afforded time to do so, the situation would stick out in their mind and they would make a record with the court. Ms. Jones expressed no independent recollection of a discussion with her client but testified that she has no reason to believe she failed to follow her usual and normal practice. She testified that she still has the notes made by Mr. Holmes in her file but they were not offered as an exhibit at the hearing. Mr. Lewis specifically testified that he gave Movant a yellow pad and pen to write down notations during

3

the voir dire process and that Movant did, in fact, take notes during voir dire. Mr. Lewis testified that he specifically remembers discussing peremptory strikes with Movant in the courtroom and that, while he does not recall Movant's specific concerns, he does remember that Movant expressed a hope that at least one person would be on the jury and he wanted at least one person off the jury. Mr. Lewis did not recall specifically why his client wanted or did not want any particular juror. Mr. Lewis testified that he made decisions regarding peremptory strikes based on input from his client exercising his best professional judgment in light of the best interests of his client.

The Court admitted into evidence the trial transcript and a copy of the CSO daily activity log from the date in question. The Court also agreed to take judicial notice of the entire criminal file underlying Movant's claims as well as the associated civil cases filed by Horton and Holmes. The trial transcript indicates that, on the date in question, the Court stood in recess at 4:13 p.m. after voir dire and strikes for cause were completed. Tr. 162. According to the CSO daily activity log, Movant and his co-defendant, Christopher Holmes, were returned from the courtroom to a holding cell at 4:15 p.m. Pet. Ex. 2, 3. The same activity log indicates Movant and Holmes were taken from the holding cell back to the courtroom at 4:52 p.m. Pet. Ex. 2, 4. The transcript indicates the Court reconvened at 4:57 p.m. Tr. 162. The minute entry sheet indicates peremptory strikes were returned to the Court at some point during the recess that took place from approximately 4:14 p.m. to 4:57 p.m. Doc. 350. Following the recess, the transcript reflects the entire venire panel re-entering the room at 4:57 and the Court then reading off the names of the fourteen selected jurors. Tr. 162.[2]

---

[2] The time references in the transcript, CSO daily activity log, and minute sheet do not necessarily reflect reference to the same source of time measurement. There was no testimony concerning how the time recordings reflected in the transcript, CSO log, and minute sheet were determined.

4

## II. STANDARD

A prisoner may move to vacate, set aside, or correct a sentence alleging "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255.  A claim of ineffective assistance of counsel may suffice to prevail under section 2255 but the "Movant faces a heavy burden."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  In such cases, the court must scrutinize the ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case."  *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).  As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances."  *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)).  Courts are highly deferential to the decisions of counsel and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  A reviewing court must look at the circumstances as they appeared to counsel at the time of the proceeding and should rarely second-guess an attorney's tactics or strategic decisions.  *Lacher v. United States*, No. 05-3175-CV-S-RED, 2006 WL 744278 (W.D. Mo. Mar. 23, 2006).  As to the "prejudice" prong, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Cheek*, 858 F.2d at 1336 (quoting *Strickland*, 466 U.S. at 694).

## III. DISCUSSION

Movant's § 2255 claim for ineffective assistance of counsel during jury selection is hereby denied because Movant has failed to satisfy the *Strickland* prongs.[3]

### A. Movant failed to establish counsel's performance was deficient.

Movant first failed to establish that his trial counsel's performance was deficient. Movant alleges his trial counsel acted deficiently by failing to require Movant's presence during the execution of peremptory strikes, by failing to object to Movant's absence during the execution of peremptory strikes, and by failing to provide an opportunity for Movant to discuss his opinions and misgivings with trial counsel regarding potential jurors.

"A criminal defendant's right to be present at every stage of a criminal trial is rooted, to a large extent, in the Confrontation Clause of the Sixth Amendment and is protected to some extent by the Due Process Clause of the Fifth and Fourteenth Amendments." *United States v. Picardi*, 739 F.3d 1118, 1123 (8th Cir. 2014) (quoting *United States v. Smith*, 230 F.3d 300, 309 (7th Cir. 2000)). The Sixth Amendment protects a defendant's right to be present where the defendant is confronting witnesses or evidence against him, *see Picardi*, 739 F.3d at 1123, and the Due Process Clause protects a defendant's right to be present "to the extent a fair and just hearing would be thwarted by his absence, and to that extent only . . . in light of the record as a

---

[3] Movant attempts to argue the burden should be on the Government to show harmless error beyond a reasonable doubt. The Court disagrees. This case is before the Court on a collateral proceeding and the burden rests on the Movant. *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969) ("In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner[.]"). To the extent Movant alleges his absence during jury selection constitutes a constitutional violation other than ineffective assistance of counsel, Movant had the opportunity to raise that issue on direct appeal. To the extent he did raise that issue on direct appeal, a 2255 motion may not be used to re-litigate such matters. *See Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011). To the extent Movant did not raise the issue on direct appeal, he must now show both cause excusing his double procedural default and actual prejudice resulting from the errors of which he complains. *See id.* at n. 3; *United States v. Frady*, 456 U.S. 152, 168 (1982); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Even if the Court assumes Movant's alleged absence during the execution of peremptory strikes constitutes a constitutional violation and assumes the issue was not litigated by the Eighth Circuit on direct appeal, *see United States v. Horton*, 756 F.3d 569, 574 n. 5 (8th Cir. 2014), Movant has failed to establish prejudice under *Frady* for the reasons stated herein. Movant cites no cases where the Court has placed the burden on the Government in a similar 2255 action.

whole." *See United States v. Gagnon*, 470 U.S. 522, 526-27 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)). Federal Rule of Criminal Procedure 43 further codifies the right to be present. As explained by the Eighth Circuit, "the codified right expressed in Rule 43 . . . 'is broader than the constitutional right, and includes the right of the criminal defendant to be present during all stages of his or her trial.'" *Picardi*, 739 F.3d at 1123 (quoting *Smith*, 230 F.3d at 309-310). Rule 43 states that, unless provided otherwise, "the defendant must be present at . . . every trial stage, including jury impanelment[.]" Fed. R. Crim. P. 43(a)(2).

"To be sure, the process of 'impaneling' a jury – at which Fed. R. Crim. P. 43 insures the defendants' presence – encompasses all the steps of selecting a jury, including the peremptory striking of members of the venire." *United States v. Chrisco*, 493 F.2d 232, 236 (8th Cir. 1974). The Eighth Circuit holds that a criminal defendant is sufficiently "present" at impaneling of the jury to satisfy both Rule 43 and the Constitution where: (1) the defendant was present in the courtroom while the potential jurors were questioned, (2) the defendant had an opportunity to register his opinions of the venire with counsel, and (3) the defendant was present in the courtroom when the clerk gave effect to the strikes by reading off the list of jurors who had not been stricken. *See id.* at 236-37; *United States v. Gayles*, 1 F.3d 735, 738 (8th Cir. 1993); *see generally Williams v. Kemna*, 311 F.3d 895, 898 (8th Cir. 2002) (citing *Cohen v. Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002)).

Here, as in *Chrisco* and *Gayles*, the peremptory strikes were executed during a recess. The testimony and evidence clearly show that Movant was present in the courtroom when the potential jurors were questioned and when the strikes were "given effect." Thus, the only question before the Court is whether Movant had sufficient opportunity to register his opinions of the veniremembers with trial counsel. Upon review of the evidence and the diverging

7

Case 6:15-cv-03019-MDH   Document 48   Filed 10/05/15   Page 7 of 14

testimonies on that issue, the Court finds the testimony of trial counsel Bob Lewis is credible and Defendant was provided sufficient opportunity to register his opinions of the potential jurors with trial counsel.

Mr. Lewis' testimony was consistent with the two prior affidavits that he submitted in this case. *See* Docs. 6-4, 15-1. His testimony was also consistent with Ms. Jones' testimony. Although Ms. Jones had no independent recollection of discussing peremptory strikes with her client, she testified that her normal practice is to do so and if her normal practice was not followed, the situation would stick out in her mind. The transcript and CSO daily activity log are consistent with Mr. Lewis' testimony because they show Horton was taken down to a holding cell when the Court stood in recess after juror questioning and strikes for cause. Horton was then returned to the courtroom approximately five minutes before the proceedings reconvened. Even accounting for travel time, this left sufficient time for Horton to convey his opinions to trial counsel regarding the potential jurors prior to the proceedings reconvening. This is especially true considering Horton testified that he was adamant, heated, and "ready to explode" on his attorney when he returned to the courtroom. Moreover, one of the potential jurors about whom Horton allegedly had concerns had already been stricken for cause by the time of the recess; thus, per Horton's hearing testimony, there were only two remaining potential jurors about whom he had significant negative impressions.

The fact that Horton never raised his alleged inability to discuss peremptory strikes with counsel prior to these collateral proceedings weighs against Horton's credibility. The transcript shows that after the peremptory strike recess, but before the venire panel reentered the room, Judge Dorr stated that the jury had been selected and the clerk would read the names of the jurors/alternates to be seated; when the Judge asked if everyone understood that, Horton made no

8

statement or objection to the Court. Tr. 162. Approximately thirty minutes later, after the jury had been sworn in and dismissed for the day but before the Court stood in recess, the Court asked the parties if there was "[a]nything else anybody wants to cover tonight before we recess for the evening"; Horton again did not bring the alleged injustice to the Court's attention. Tr. 173. The next morning, Judge Dorr asked whether there were any other issues or concerns that he should address before the jury entered the room to begin opening statements; Horton remained silent. Tr. 177-178. Judge Dorr made similar statements throughout the trial yet Horton never raised the issue now presented. Movant testified that he did not bring the issue to the Court's attention because, in part, he thought Judge Dorr was annoyed with him from pro se filings and self-representation prior to trial; however, a review of the record shows that Movant did not appear before Judge Dorr until the first day of trial and the first thing Movant said to Judge Dorr during the pre-trial evidentiary hearing, in which he represented himself, was that Mr. Lewis would represent him for trial. Tr. 12. Nothing in the record suggests irritation or annoyance by Judge Dorr. Horton also stated he did not raise the issue during trial because he thought he could only speak through his trial counsel; however, Horton offered no testimony that he raised the alleged injustice to trial counsel or requested trial counsel to bring the issue to the Court's attention at any point after the jury was seated. Following the guilty verdict, Horton immediately filed a pro se motion for new trial but he did not raise the issue of inability to discuss the potential jurors with counsel. Doc. 378-379. Although he claims he did not raise the issue because he thought he had to raise it in a separate motion and he was out of stamps/stationary, the record shows Horton sent multiple documents to the Court following his motion for new trial, *see* Docs. 391, 395-395, 403, which indicates he did have access to stationary/stamps. Moreover, during sentencing, Judge Dorr gave Horton – who was proceeding

9

pro se at the time – the opportunity to state whatever he wanted to state for the record;[4] Horton discussed various alleged errors resulting in his allegedly unfair trial but he did not mention an inability to discuss peremptory strikes with counsel. Sentencing Tr. 6-10.

Further weighing against Horton's credibility are his motive to lie in this litigation (he is facing a life sentence that has been affirmed on appeal), the sheer number of injustices that he alleges occurred in this case (see record from below, Eighth Circuit opinion, and Court's previous order denying Movant's 2255 claims), and his prior statements that allege/infer he was absent both during a large portion of the afternoon voir dire session and when the list of juror names were read in the courtroom (*see, e.g.*, Doc. 20 at p. 5) both of which are refuted by the record.

In light of the foregoing, the Court finds the testimony of Mr. Lewis credible. According to Mr. Lewis' credible testimony, Horton was provided a legal pad and pen prior to voir dire, he was advised to take notes regarding his impressions of potential jurors during voir dire, he had the opportunity to discuss his notes and opinions of the potential jurors with Mr. Lewis in the courtroom prior to impaneling of the jury, he told Mr. Lewis of one person he wanted on the jury and at least one person he did not want on the jury, and Mr. Lewis heard Horton's opinions and exercised the peremptory strikes in his best professional discretion in light of his client's best interests. Horton was present when the list of juror names was read off and made no objection. Based on the foregoing, the Court finds Movant had sufficient opportunity to discuss the potential jurors with counsel. *See, e.g., Chrisco*, 493 F.2d at 236 (8th Cir. 1974) (holding

---

[4] Horton's pro se post-trial motion for new trial was originally denied because he was represented by counsel (Doc. 383). Horton then filed a motion to proceed pro se and the Court took his pro se status under advisement until sentencing and ruled on the merits of Horton's pro se motion for new trial (Doc. 392). At sentencing, Judge Dorr permitted Horton to proceed pro se. Judge Dorr then explained: "[N]ormally, Mr. Horton, I would hear from counsel first and then I would hear from the individual, meaning you, if you want to be heard. Since you're representing yourself, I'll just go to you first and then I'll hear from the government as to the appropriate sentence. So tell me whatever – and, also, as an individual I would give you the chance to tell me whatever you want to state for the record." Sentencing Tr. 6.

10

Constitution and Rule 43 satisfied where "it seems clear from the record that appellants discussed their misgivings with counsel during or immediately following the formal impaneling process and that the decision was made by counsel not to raise any objection at that time"); *United States v. Fontenot*, 14 F.3d 1364, 1370 (9th Cir. 1994) (sufficient where "Fontenot had the opportunity to discuss his misgivings with counsel during and immediately following voir dire, prior to exercising his peremptory challenges"); *see also Allen v. United States*, No. 4:07CV00027 ERW, 2011 WL 1770929, at *13 (E.D. Mo. May 10, 2011) (counsel sufficiently consulted with defendant regarding jury selection where defendant provided his attorney a list of three potential jurors who he wanted stricken).

Because Movant was present in the courtroom during the questioning of potential jurors, had the opportunity to convey his impressions of the potential jurors to counsel, and was present in the courtroom when the peremptory strikes were given effect, the record shows Movant was sufficiently "present" at impaneling of the jury to satisfy both Rule 43 and the Constitution. Thus, Movant has failed to establish trial counsel acted deficiently during jury selection.

### B.  Movant failed to establish prejudice resulting from counsel's allegedly deficient performance.

Even if the Court were to assume trial counsel did act deficiently, Movant further failed to establish prejudice resulting from his trial counsel's allegedly deficient performance. The Court rejects Movant's argument that counsel's allegedly deficient performance results in structural error and prejudice must be presumed. *See generally United States v. Picardi*, 739 F.3d 1118, 1123 n. 3 (8th Cir. 2014) ("Structural errors have been recognized in a very limited set of circumstances, such as the complete denial of counsel, a biased judge, racial discrimination in jury composition, denial of a public trial, and a defective jury instruction on the reasonable-

11

doubt standard of proof."); *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (holding the presumption-of-prejudice exception to *Strickland* applies "where assistance of counsel has been denied entirely or during a critical stage of the proceeding.").

The Eighth Circuit has previously refused to apply the presumption-of-prejudice exception to deficient performance of counsel during voir dire and in exercising peremptory strikes. *See United States v. Kehoe*, 712 F.3d 1251, 1254 (8th Cir. 2013); *White v. Luebbers*, 307 F.3d 722, 729 (8th Cir. 2002). This case is slightly different because Movant alleges he was not sufficiently present during impaneling of the jury such that his counsel erred by failing to object to his absence during a critical stage. Although the Eighth Circuit has not directly addressed that issue, the Eighth Circuit has previously looked to guidance from cases that analyze whether an error is amenable to harmless error analysis in determining whether to apply the presumption-of-prejudice exception. *See McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998). A review of those cases here reveals the harmless error principle has been applied in similar cases involving violations of a defendant's Rule 43 right to be present during jury impaneling. *See, e.g., United States v. Tipton*, 90 F.3d 861, 874-75 (4th Cir. 1996); *United States v. Fontenot*, 14 F.3d 1364, 1370 (9th Cir. 1994); *United States v. Alessandrello*, 637 F.2d 131, 140-144 (3d Cir. 1980); *Henderson v. United States*, 419 F.2d 1277, 1278 (5th Cir. 1970); *see generally United States v. Gordon*, 829 F.2d 119, 127-128 (D.C. Cir. 1987) (distinguishing between defendant's absence for small portion of jury selection versus defendant's absence from all of jury selection). Based on the foregoing, the Court declines to presume prejudice in this case because Movant was not denied counsel entirely during a critical stage of the proceeding and Movant's absence during only a portion of the jury impaneling process does not amount to structural error. *See generally United States v. Thomas*, 724 F.3d 632, 646 (5th Cir. 2013).

Because the Court declines to presume prejudice, Movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, Movant alleges he would have taken the stand and testified had the jury composition been different; he alleges that he felt the jury was already against him because two of the jurors about whom he had bad impressions were seated on the jury – namely, the woman who cried upon hearing the other woman had been raped by a black man and a man who allegedly stared coldly at the defendants during voir dire. The Court finds this evidence insufficient to show a reasonable probability that, but for Mr. Lewis' alleged errors, the result of the trial would have been different. First, even assuming Horton had the opportunity to convey his impressions to counsel regarding certain potential jurors, Mr. Lewis had no duty to follow Horton's suggested strikes and there is no evidence that Mr. Lewis failed to "exercise the customary skills and diligence" that a reasonably competent attorney would have exercised in making the strikes that he did.[5] Second, there is no way to know who would have been on or off the jury, or what impact those persons would have had on the verdict, had Mr. Lewis struck the juror(s) suggested by Horton.[6] Third, the evidence presented against Horton at trial was so overwhelming that it is unlikely the jury would have found in Horton's favor regardless of jury composition or whether he took the stand.[7]

---

[5] The Court has reviewed the voir dire questions and answers related to the venire woman's statement that she had been raped by a black man and notes that that there was nothing especially inflammatory about the woman's comment. Moreover, the Court asked various questions both before and after that comment regarding race and the ability to be impartial. No potential juror indicating they could not be impartial on the basis of race.

[6] The exercise of peremptory strikes is rarely between one believed to be a clearly favorable juror and one believed to be a clearly unfavorable juror. Rather, it is often trying to estimate which potential juror is most unfavorable. Mr. Lewis is an experienced criminal defense attorney and should not be second guessed for the exercise of his best professional discretion.

[7] The trial transcript shows the case was submitted to the jury at approximately 10:28 a.m. and the jury returned their verdict at approximately 11:48 a.m. finding Horton guilty of all 16 counts submitted against him.

13

In sum, even assuming Mr. Lewis' representation was deficient as alleged by Movant, Movant failed to establish a reasonable probability that, but for counsel's alleged unprofessional errors, the result of his trial would have been different.

## IV.  DECISION

Based on the foregoing, Movant's remaining claim for relief under § 2255 is **DENIED**. As discussed above, Movant failed to meet the requirements of *Strickland* in order to show ineffective assistance of counsel such that he is entitled to relief.  In light of the ruling made herein and the Court's prior ruling on August 3, 2015, Movant's § 2255 motion is hereby **DENIED IN FULL**.

## V.  CERTIFICATE OF APPEALABILITY

For Movant's § 2255 claim denied herein, the Court finds Movant failed to make a substantial showing of the denial of a constitutional right, as required for issuance of a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) ("A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.").  Therefore, the Court shall not issue a certificate of appealability as to the claim raised in Movant's § 2255 motion related to ineffective assistance counsel surrounding Movant's alleged absence and lack of opportunity to discuss peremptory strikes with counsel.

**IT IS SO ORDERED**.
Dated: October 5, 2015

                                         */s/ Douglas Harpool*
                                         **DOUGLAS HARPOOL**
                                         **UNITED STATES DISTRICT JUDGE**